# IN THE COURT OF APPEALS OF IOWA

No. 22-1595
Filed November 17, 2022

**IN THE INTEREST OF R.M.,**
**Minor Child,**

**A.P., Father,**
       Appellant.
_____

Appeal from the Iowa District Court for Monona County, Mark C. Cord III, District Associate Judge.

The father appeals the termination of his parental rights. **AFFIRMED.**

Debra S. De Jong, Orange City, for appellant father.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena and Mackenzie Moran, Assistant Attorneys General, for appellee State.

Michelle M. Hynes of Juvenile Law Center, Sioux City, attorney and guardian ad litem for minor children.

Considered by Bower, C.J., and Greer and Badding, JJ.

**GREER, Judge.**

The father appeals the termination of his parental rights to R.M., who was born in 2020. In an amended petition, the county attorney petitioned to terminate the father's parental rights under Iowa Code section 232.116(1)(b), (d), (e), (h), (i), and (*l*) (2022). The juvenile court granted the petition, terminating the father's rights under section 232.116(1)(d) and (i).[1] Here, the father challenges the grounds for termination, argues the loss of his rights is not in the child's best interests, and maintains he should be given additional time to work toward reunification. We review termination proceedings de novo. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016).

R.M.'s guardian ad litem filed a response on appeal, arguing we can properly affirm under either paragraph (d) or (i) of section 232.116(1). *See id.* at 219 ("The first step is to determine whether any ground for termination under section 232.116(1) has been established."). The State also filed a response, urging that we may also affirm termination of the father's rights under paragraph (h). *See id.* at 221 ("'It is well-settled law that a prevailing party can raise an alternative ground for affirmance on appeal without filing a notice of cross-appeal, as long as the prevailing party raised the alternative ground in the district court.' . . . [W]e hold the prevailing party in a termination-of-parental-rights action need not file a cross-appeal or a rule 1.904(2) motion to assert an alternative ground for affirmance on appeal that was raised before the juvenile court." (internal

---

[1] The mother's rights were also terminated; she does not appeal.

citations omitted)).  We choose to review termination under paragraph (h), which allows the court to terminate parental rights when:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance [(CINA)] pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

Iowa Code § 232.116(1)(h).

R.M. was born in late 2020, adjudicated a CINA in March 2021, and removed from the father's custody in April 2021 (about fifteen months before the July 2022 termination trial).  The only element in dispute is whether R.M. could be returned to the father's care at the time of the termination trial.  *See M.W.*, 876 N.W.2d at 223 (interpretating "at the present time" to mean "at the time of the termination hearing").

The father is unable to parent R.M. on his own, and he does not have a home to which R.M. could be returned.  After losing his job at a fast food restaurant in April 2022 for failing to show up and being "not willing to work," the father was unable to pay his rent and lost his apartment.  He moved in with his parents—the paternal grandparents—who live in a one-bedroom camper in Nebraska.[2]  Two of the father's siblings also live in the camper.  The father testified he sleeps on the

---

[2] The family stopped living in their home due to structural issues that made it unsafe; they are living in a camper on the same property.

floor, while one of his brothers sleeps in a chair and another on the couch. There is no room for R.M. in the home.[3]

The father testified he receives social security income due to his learning disability. Whether due to this learning disability or for some other reason, the father has struggled to meet R.M.'s needs during the relatively short supervised visits. The family support specialist or the paternal grandmother, who has attended a number of visits, often have to remind the father to change R.M.'s diaper and feed her. These reminders have been needed for the duration of supervised visits—approximately fifteen months. And, on more than one occasion, the father placed R.M. on a table and then left her unattended. There is clear and convincing evidence R.M. could not be safely returned to the custody of the father at the time of the termination hearing. *See In re A.M.*, 843 N.W.2d 100, 111 (Iowa 2014) (affirming termination where the parents had "lower mental functioning" and, after the statutory time frame passed, "the parents were still not in a position to care for [the child] without ongoing [DHHS] involvement").

Next, the father argues termination of his rights is not in the child's best interests. We are "required to use the best-interest framework established in section 232.116(2) when [we] decide[] what is in the best interest of the child." *In re P.L.*, 778 N.W.2d 33, 37 (Iowa 2010). "The primary considerations are 'the child's safety,' 'the best placement for furthering the long-term nurturing and growth

---

[3] The father testified the family could remove their table to make space for R.M.'s crib. But the Iowa Department of Health and Human Services (DHHS) social worker testified that, because the father and his family live in Nebraska, "the State of Nebraska would need to approve their home and it will never pass a home study."

of the child,' and 'the physical, mental, and emotional condition and needs of the child.'" *Id.* (quoting Iowa Code § 232.116(2)). The father is not yet able to care for R.M. on his own, and it is not clear if or when he will be able to do so. And R.M. has more than just basic needs—after being exposed to methamphetamine in utero, R.M. has language delays and difficulty controlling her anger. Her current foster placement told the court R.M. is

> behind in so many things that [they] have AEA, the Child Health Specialty Clinic getting involved. . . . She's trying to do her best, but she's—she's far behind. . . . [S]he's going to need a lot of doctors, a lot of help in all of this. She'll probably need counseling [and] she has a high chance of ADHD and many other medical issues due to the drugs.

Nothing in the record suggests the father can handle the special needs of this child. Instead, there was evidence that the father would no-show for the scheduled well-child check-ups and that he could barely meet the child's basic needs, let alone having skills to work on the child's developmental delays. *See In re D.W.*, 791 N.W.2d 703, 708 (Iowa 2010) ("The mental capacity of a parent . . . [is a] relevant consideration[] in evaluating the safety of the child, the best placement for optimal growth of the child, and the physical, mental, and emotional condition and needs of the child.").

Additionally, the father maintained his relationship with the mother throughout the pendency of the child-welfare proceedings. Her were also terminated. The mother has several significant mental-health diagnoses, and she experiences hallucinations. At the time of the termination trial, the mother was not treating her mental health. Additionally, the mother uses methamphetamine. The father agreed these issues could pose a danger to small children, however he

voiced that the mother acted "normal" while on methamphetamine, alluding to the conclusion that he did not appreciate the harm to R.M. that might result from the mother in her drug-induced state. It is not clear he could or would keep R.M. from the mother if she was returned to his care despite recognizing the risk the mother may pose without mental-health and substance-abuse treatment. Termination of the father's parental rights is in R.M.'s best interests.

Finally, the father argues he should get six more months to work toward reunification with R.M. But in spite of the father's obvious love for R.M. and his best intentions, we cannot say the need for R.M.'s removal from the father's custody will no longer exist at the end of an additional six months. *See* Iowa Code § 232.104(2)(b).

We affirm the termination of the father's parental rights to R.M.

**AFFIRMED.**